Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:    (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Semira Hodzic*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Semira Hodzic,<br><br>             Plaintiff,<br><br>      v.<br><br>Life Insurance Company of North America, Goodrich Corporation Four Coliseum Centre, Goodrich Corporation Four Coliseum Centre Employee Disability Plan,<br><br>             Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Semira Hodzic (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

1  U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of
2  the United States.

### *Parties*

3

4      2.     Plaintiff is a resident of Maricopa County, Arizona.

5      3.     Upon information and belief, Defendant Goodrich Corporation Four
6  Coliseum Centre (hereinafter referred to as the "Company") sponsored, subscribed to and
7  administered a group disability insurance policy which was fully insured and administered
8  by Life Insurance Company of North American (hereinafter referred to as "LINA"), which,
9  upon information and belief, is wholly owned and a subsidiary of Cigna Corporation. The
10 specific LINA policy is known as group policy FLK0030087. The Company's purpose in
11 subscribing to the LINA policy was to provide disability insurance benefits for its
12 employees. Upon information and belief, the LINA policy may have been included in
13 and part of the Goodrich Corporation Four Coliseum Centre Employee Disability Plan
14 (hereinafter referred to as the "Plan") which may have been created to provide the
15 Company's employees with welfare benefits. At all times relevant hereto, the Plan
16 constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

17     4.     Upon information and belief, the Company or Plan may have delegated
18 responsibility for the plan and/or claim administration of the policy to LINA. Plaintiff
19 believes that as it relates to her claim, LINA functioned in a fiduciary capacity as the Plan
20 and/or Claim Administrator.

21     5.     Upon information and belief, Plaintiff believes LINA operated under a
22 conflict of interest in evaluating her claim due to the fact it operated in dual roles as the
23 decision maker with regard to whether Plaintiff was disabled as well as the payor of
24 benefits; *to wit,* LINA's conflict existed in that if it found Plaintiff was disabled it was also
25 liable for payment of those benefits.

26

6. The Company, Plan and LINA conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits, including waiver of life insurance, which she may been entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about May 1, 2008 due to serious medical conditions and was unable to work in her designated occupation as an Assembler, which required her to work around chemicals. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff applied for and received short term disability benefits for the period May 1, 2008 through October 27, 2008 through The Reed Group, who, upon information and belief, administered the short term disability policy provided for the Company's employees.

11. Plaintiff thereafter applied for long term disability benefits under the relevant LINA policy. Upon information and belief, Plaintiff became eligible to receive long term disability benefits as of October 28, 2008.

1    12.   The relevant LINA long term disability policy provides the following

2 definition of a covered disability which applies to Plaintiff's claim:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is either:
>
> 1. unable to perform all the material duties of his or her Regular Occupation or a Qualified Alternative; or
>
> 2. unable to earn 80% or more of his or her Indexed Covered Earnings.
>
> After Disability Benefits have been paid for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is either:
>
> 1. unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified for based on education, training, or experience, or
>
> 2. unable to earn 80% or more of his or her Indexed Covered Earnings.

13.   In support of her claim for long term disability, Plaintiff submitted to LINA medical records from her treating physicians supporting her disability as defined by the relevant LINA policy.

14.   LINA notified Plaintiff in a letter dated February 5, 2010 that it was denying her claim for long term disability benefits, erroneously finding that Plaintiff's disability occurred only sporadically and was controlled by her medication and, therefore, LINA determined that Plaintiff could perform her regular occupation.

15.   Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the February 5, 2010 denial of her claim for long term disability benefits by a letter dated July 30, 2010.  In support of her appeal, Plaintiff submitted additional medical evidence to LINA demonstrating her total disability as defined in the relevant LINA policy.

16.   In support of her appeal, Plaintiff submitted to LINA a September 22, 2008 narrative letter from Plaintiff's treating board certified neurologist, who opined Plaintiff "should not work around chemicals, which for her are a strong trigger" for her serious medical condition.

17. Plaintiff submitted another narrative letter to LINA from the same treating board certified neurologist dated January 19, 2009 who again opined Plaintiff's serious medical conditions "are trigged by working around chemicals…she should not work around chemicals including at any time after 1 May 2008." Plaintiff's treating neurologist further stated Plaintiff's medication either prohibited her from working due to side effects or did not work to prevent/control her serious medical condition. This physician further noted Plaintiff's May 24, 2008 MRI showed signs consistent with her serious medical condition.

18. In further support of her appeal, Plaintiff submitted to LINA a vocational report prepared by a certified rehabilitation counselor dated April 26, 2009. The vocational expert concluded, "[f]rom a vocational standpoint the issue is that one can not [sic] escape exposure to chemicals in normal, everyday living. Ms. Hodzic is not able to comfortably conduct her life due to her chemical disability and is not able to work in any environment because of this."

19. As part of its review of Plaintiff's claim for long term disability benefits, LINA referred Plaintiff's claim to an unidentified "Medical Director" who appears to be one of its own employees. Plaintiff questions the credentials, independence, impartiality and bias of LINA's own employee to fully and fairly review her claim and she believes the Medical Director's opinion is adversarial because of the individual's conflict of interest as an employee. Plaintiff believes LINA's financial conflict of interest is a motivating factor for why it referred Plaintiff's claim to its own employee for review.

20. LINA's unidentified Medical Director did not examine Plaintiff and his/her opinion that Plaintiff was able to perform the light activities her job demands, despite the fact that her occupation requires her to be around chemicals, was based entirely on a selective review of Plaintiff's medical records and a selective review of her treating

medical professionals' opinions that she was unable to engage in any gainful employment that required her to work around chemicals.

21. In a letter dated November 4, 2010, LINA notified Plaintiff it had denied her appeal for long term disability benefits under the LINA policy, relying upon the findings of its unidentified Medical Director.

22. LINA's denial again failed to provide Plaintiff with a full and fair review by failing to properly investigate her claim in violation of ERISA, specifically 29 C.F.R. § 2560.503-1(h) because it again completely failed to reference, consider and/or selectively reviewed most if not all of her evidence which adequately documented her inability to work around chemicals.

23. LINA denied Plaintiff of a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, disregarding Plaintiff's self-reported symptoms and ignoring medical evidence which was consistent with Plaintiff's self-reported symptoms, failing to consider all the limitations set forth in her medical evidence and failing to obtain an independent medical examination when the policy allowed for one.

24. LINA has notified Plaintiff she is entitled to bring legal action regarding her claim for long term disability benefits.

25. In evaluating Plaintiff's claim on appeal, LINA had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [1]

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it

26. Plaintiff believes the reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles it undertook as decision maker and payor of benefits which created an inherent conflict of interest and this conflict may also be the reason the Plan retained LINA to administer her disability claim.

27. Plaintiff is entitled to discovery regarding LINA's aforementioned conflicts of interest and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced LINA's decision to deny her claim.

28. With regard to whether Plaintiff meets the definition of disability set forth in the Plan, the Court should review the evidence in Plaintiff's claim *de novo,* because even if the Court concludes the Plan confers discretion, the unlawful violations of ERISA committed by the Plan and its administrators, as referenced herein, are so flagrant they justify *de novo* review.

29. As a direct result of LINA's decision to deny Plaintiff's disability claim she has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

30. The evidence supports a finding that Plaintiff meets the "own" and "any" occupation definitions of disability in the policy. Therefore, Plaintiff is entitled to benefits

---

simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

pursuant to both definitions of disability even though LINA did not make a determination on whether she met the "any" occupation definition of disability. As a result of LINA's decision that she did not meet the less restrictive "own" occupation definition of disability, it is or was administratively futile for Plaintiff to have sought a determination from LINA with regard to whether she met the definition of disability for "any occupation" benefits before she received a final administrative denial in her claim.

31. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

32. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' unjustified denial of payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff disability benefits pursuant to the "own" and "any" occupation definitions of disability as a result of her meeting both definitions of disability in the policy from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon as well as any other employee benefits she may be entitled to, including waiver of life insurance premiums, from the Plan and/or Company as a result of being found disabled;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time she meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 31st day of March, 2011.

        SCOTT E. DAVIS. P.C.

    By:    */s/ Scott E. Davis*
            Scott E. Davis
            Attorney for Plaintiff